IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:17-CR-388** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **TYRONE DONOVAN JACOBS, JR.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

The court sentenced defendant Tyrone Donovan Jacobs, Jr., to 108 months' imprisonment after he pled guilty to possession of a firearm by a convicted felon. Presently before the court is Jacobs' *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The court will deny Jacobs' Section 2255 motion.

### I. Factual Background & Procedural History[1]

A December 2017 criminal information charged Jacobs with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(3), as well as a forfeiture allegation pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). (See Doc. 1). The government docketed a signed plea agreement in December 2017. (See Doc. 3). Jacobs did not file any substantive pretrial motions.

On March 26, 2018, Jacobs entered a guilty plea pursuant to his plea agreement with the government. (See Docs. 3, 20). During the change-of-plea

---

[1] This section is based on the current record, including official transcripts from Jacobs' guilty plea and sentencing hearings, as well as the presentence investigation report.

proceeding, the court informed Jacobs, *inter alia*, that his guilty plea to the information meant he would forfeit "the right to appeal any pretrial motions" he could have filed. (See Doc. 36, 3/26/18 Hr'g Tr. 10:24-11:5). Jacobs responded that he understood. (See id. at 11:6). The court also reminded Jacobs that he had been charged with "possession of a firearm by a convicted felon," requested the government to outline its factual basis for the charge, and admonished Mr. Jacobs: "And please pay careful attention to [government counsel's] statement of facts, Mr. Jacobs, because when he's done I will turn to you and I will ask do you fully admit to those facts. . . . I'll give you every opportunity that you need to correct what you believe is inaccurate." (See id. at 20:19-21:11). Jacobs affirmed that he understood his charge and the court's instruction. (See id. at 21:4, 21:7, 21:12). The government then placed the following factual basis for Jacobs' plea on record:

> . . . [O]n February 1, 2017 a traffic stop was conducted by the Montoursville police department after an officer observed a vehicle with improper taillight colors traveling on Washington Street. The officer at that time observed the front seat passenger leaning over on three occasions, each time disappearing completely from view. As the officer was awaiting the arrival of backup he approached the driver's side and began to talk to the driver Mackay Solomon. The officer at that time noticed a smell of marijuana, which the driver admitted to smoking earlier in the day. The officer also attempted to identify the front seat passenger, who did not possess identification, but gave a false name of Troy Young. . . .
>
> . . . [T]he driver and her passengers were removed from the vehicle and searched. The front seat passenger, whose true identity was determined to by Tyrone Donovan Jacobs, was found to be in possession of a fistful of one-hundred-dollar bills, five of which were determined to be counterfeit. Once the occupants of the vehicle were removed the officer checked under the front

> passenger seat and located a Ruger P95DC 9-millimeter pistol with an obliterated serial number. . . . Prior to the defendant's possession of this firearm he was convicted in the Court of Common Pleas for Philadelphia County, Pennsylvania on February 29, 2016 of the offense of possession with intent to deliver a controlled substance.

(See id. at 21:14-23:5). Following this recitation, the court asked Jacobs: "Do you fully admit to those facts?" Jacobs responded "Yes." (See id. at 23:7-10). The court accepted Jacobs' plea of guilty. (See id. at 23:22-23).

The United States Probation Officer issued a presentence investigation report ("PSR") which contained several paragraphs concerning Jacobs' offense conduct. (See Doc. 31 ¶¶ 4-10). These paragraphs, which largely mirror the government's factual basis during Jacobs' guilty plea hearing, state that an officer "detected an odor of marijuana" during a traffic stop and the driver (Solomon) admitted to smoking marijuana "earlier in the day." (See id. ¶ 5). The PSR reiterates that Jacobs provided the officer a false name of Troy Young and adds that Jacobs informed officers "he lied about his identity because there were outstanding warrants for his arrest." (See id. ¶¶ 5, 7). The PSR also lists two convictions in Philadelphia County for possession with intent to deliver, for which sentencing was deferred and for which active bench warrants were issued due to Jacobs' failure to appear. (See id. ¶¶ 29, 30). Jacobs protectively objected to his base offense level in light of a case then pending before the court of appeals, but did not otherwise object to the PSR. (See Doc. 26).

The court held a sentencing hearing on July 30, 2018. During sentencing, the defense did not raise any additional objections to the PSR. (See Doc. 37, 7/30/18

3

Hr'g Tr. 2:15-3:12, 4:2-21). In announcing its sentence, the court again noted the circumstances of Jacobs' arrest, stating the officer who pulled over the vehicle in which Jacobs was a passenger detected "an odor of marijuana coming from the vehicle." (See id. at 12:7-16). The court sentenced Jacobs to 108 months' imprisonment and three years of supervised release.

Jacobs appealed his sentence based on his objection to the base offense level, and the court of appeals affirmed. Jacobs then filed a timely *pro se* motion to vacate pursuant to Section 2255. The court initially appointed counsel to represent Jacobs, but Jacobs elected to proceed *pro se* instead. The court thereafter established a briefing schedule. Jacobs' motion is ripe for disposition.

## II. Legal Standards

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." See 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s]

4

any facts warranting § 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See Strickland, 466 U.S. at 687-88.  The defendant bears the burden of proving both prongs. See id. at 687.

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct. See id. at 689.  There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless motion. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different." Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the

inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### III. Discussion

Jacobs' motion rests on three grounds: *first*, that his trial counsel was ineffective for failing to "investigate the false statement . . . that an occupant of the car stated that she had smoked marijuana earlier in the day"; *second*, that he is actually innocent of the Section 922(g) charge because he was not informed that he was required to know of his previous felony convictions; and *third*, that Section 922(g) is void for vagueness. (See Doc. 43 at 4, 5, 7).

#### A. Counsel's Failure to Investigate

Jacobs first claims that his counsel rendered ineffective assistance by failing to investigate the traffic stop that led to Jacobs' arrest. (See Doc. 43 at 13-15). According to Jacobs, Solomon (the vehicle's driver) never admitted to smoking marijuana, and Jacobs' counsel should have filed a motion to suppress evidence of the firearm recovered from the vehicle on this basis. (See id.; see also Doc. 55 at 1-2).[2]

We quickly dispense with this ground. Principally, Jacobs does not acknowledge or explain his failure to contest this fact during his guilty plea or at sentencing. During the guilty plea hearing, Jacobs indicated he understood that he was forfeiting the right to submit any pretrial motions by taking a plea. (See 3/26/18

---

[2] The court notes that Jacobs' briefing appears to reference a police report from the vehicle stop that led to his arrest. (See, e.g., Doc. 43 at 14 (averring officer "lied in his statement of reasons")). Jacobs did not attach any police report to his motion.

6

Hr'g Tr. 10:22-11:15). Later, the court emphasized that Jacobs needed to "pay careful attention to" the government's recitation of facts because Jacobs would need to state whether he fully admitted to those facts. (See id. at 20:22-21:3). Jacobs indicated he understood this instruction, and also understood he could "correct" any factual statement he considered inaccurate. (See id. at 21:5-12).

The government's factual recitation included that on February 1, 2017, law enforcement conducted a traffic stop of a vehicle in which Jacobs was the front seat passenger. (See id. at 21:14-22). According to the government, while all occupants were still inside the vehicle, the officer "approached the driver's side" and "noticed a smell of marijuana, which the driver admitted to smoking earlier in the day." (See id. at 21:21-22:6). Due to his presence in the car, Jacobs would have been able to deny or at least claim no knowledge of the verbal exchange between Solomon and the officer. But during his plea colloquy, Jacobs responded "yes" with no qualifications when asked if he *fully* admitted to the government's facts. (See id. at 23:7-10).

The PSR also provided Jacobs with ample opportunity to litigate or otherwise dispute whether Solomon admitted to smoking marijuana. In relevant part, the PSR states an officer "detected an odor of marijuana" during a traffic stop and the driver (Solomon) admitted to smoking marijuana "earlier in the day." (See Doc. 31 ¶ 5). Jacobs undisputedly filed no objection to this paragraph of the PSR. (See Doc. 26). Nor did he raise the issue at sentencing, either through counsel or during his allocution. (See generally Doc. 37).

Assuming *arguendo* that Jacobs informed his trial counsel that Solomon never admitted to smoking marijuana, Solomon's admission or lack thereof is irrelevant for determining the propriety of the vehicle search.[3] Our court of appeals holds that "the smell of marijuana alone . . . may establish not merely reasonable suspicion, but probable cause." See United States v. Green, 897 F.3d 173, 186 (3d Cir. 2018) (quoting United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006)); see also United States v. Charles, 29 F. App'x 892, 898 (3d Cir. 2002) (nonprecedential) (holding "plain smell of marijuana" under totality of the circumstances supplied probable cause for search warrant for residence). According to the facts adduced during Jacobs' guilty plea hearing, the officer who stopped the vehicle "noticed a smell of marijuana." (See 3/26/18 Hr'g Tr. 21:21-24). Solomon's admission to smoking marijuana was therefore unnecessary to establish probable cause for the search that yielded the Ruger firearm underlying Jacobs' Section 922(g) charge, because the officer possessed probable cause without Solomon's admission. See Green, 897 F.3d at 186.

---

[3] Warrantless searches generally are presumed to be unreasonable, subject to only "a few specifically established and well-delineated exceptions." See Katz v. United States, 389 U.S. 347, 357 (1967). One of those exceptions is the "automobile exception," which permits the warrantless search of a vehicle when law enforcement has "probable cause to believe that the vehicle contains evidence of a crime." See United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (citation omitted). If a warrantless search of the vehicle is authorized under the automobile exception, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id. (quoting United States v. Ross, 456 U.S. 798, 825 (1982)). Jacobs' reply states his belief that "[t]he proper procedure would have been an inventory search." (See Doc. 55 at 3). But an inventory search can be performed *sans* warrant, as it also "constitutes a well-defined exception to the warrant requirement." See Illinois v. Lafayette, 462 U.S. 640, 643 (1983). We therefore deem Jacobs' objection to the *method* of the vehicle search to be meritless.

Based on Jacobs' factual admissions during his guilty plea about Solomon's admission to smoking marijuana, his acceptance of the PSR's facts regarding the same, and the superfluous nature of Solomon's admission, Jacobs' claim of ineffective assistance fails. His counsel was not ineffective for failing to investigate and file a motion to suppress that ultimately would have been meritless. See Sanders, 165 F.3d at 253. We will deny his motion on this ground.

### B. Section 922(g) Grounds

Jacobs' second and third grounds for relief both stem from the United States Supreme Court's decision in Rehaif v. United States, 588 U.S. ___, 139 S. Ct. 2191 (2019). Jacobs contends he is "actually innocent" of the Section 922(g) charge because he was "never informed" of the knowledge requirement for that charge, and that the statute itself is void for vagueness. (See Doc. 43 at 5-7). The government argues both of these claims are procedurally defaulted.

In Rehaif, the Supreme Court clarified the *mens rea* necessary for a defendant to knowingly violate Section 922(g). See Rehaif, 139 S. Ct. at 2194. The Court held that the word "knowingly" applies to both the defendant's conduct and the defendant's status. See id. Thus, for the defendant to be convicted, the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." Id. In other words, "[i]n felon-in-possession cases after Rehaif, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a*

*felon* when he possessed the firearm." See Greer v. United States, 593 U.S. ___, 141 S. Ct. 2090, 2095 (2021).[4]

Generally, a Section 2255 collateral challenge cannot serve as a substitute for an appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). When a defendant fails to raise a claim on direct appeal, he "procedurally defaults" the claim for purposes of collateral review. See Hodge v. United States, 554 F.3d 372, 378-79 (3d Cir. 2009) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). A defendant may overcome default in two ways: by showing "'cause and actual prejudice'" should the default be given preclusive effect, or by demonstrating "he is 'actually innocent.'" See Bousley, 523 U.S. at 622 (quoting Murray v. Carrier, 477 U.S. 478, 489, 496 (1986)). Unless a defendant overcomes procedural default, the court will not consider his claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Jacobs did not raise these issues on direct appeal, and litigated only his base offense level. (See Doc. 42). We

---

[4] The court notes Jacobs requested his motion be amended to include reference to the Fourth Circuit's decision in United States v. Gary, 954 F.3d 194 (4th Cir. 2020), rev'd *sub nom.* Greer, 141 S. Ct. at 2090. (See Doc. 49 at 1). The Greer decision reversed the Fourth Circuit's decision in Gary and held that "omission of that *mens rea* element from a plea colloquy" is not structural error and "does not 'deprive defendants of basic protections without which a criminal [proceeding] cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" See Greer, 141 S. Ct. at 2100 (quoting Neder v. United States, 527 U.S. 1, 8-9 (1999)). Thus, to the extent Jacobs contends that the omission of the *mens rea* element from his plea colloquy was a structural error, (see Doc 43 at 15-17), his argument is foreclosed by Greer, as well as our own court of appeals. See United States v. Boyd, 999 F.3d 171, 179 (3d Cir. 2021) (failure to include knowledge-of-status element in Section 922(g) jury instructions was not "structural error").

read Jacobs' motion and briefing to argue both cause and prejudice as well as actual innocence in seeking to overcome default. (See Doc. 43 at 5, 5-20).

### 1. *Procedural Default on Rehaif Claim – Cause*

To show cause adequate to overcome procedural default, a defendant must establish that an "objective factor external to the defense" prevented him from advancing the claim at a procedurally appropriate time. See United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)). Cause has been found to exist when a claim "is so novel that its legal basis is not reasonably available to counsel" in earlier proceedings. See Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). The Supreme Court has identified three nonexhaustive circumstances in which this novelty exception may apply to excuse counsel's failure to raise a legal theory on appeal: (1) the Court overrules one of its precedents; (2) the Court overturns a "longstanding and widespread [and] near-unanimous body of lower court authority"; or (3) the Court rebukes a practice its prior opinions "arguably" sanctioned. See Reed, 468 U.S. at 17 (citations omitted). However, cause is not established just because "subsequent legal developments have made counsel's task easier." Smith v. Murray, 477 U.S. 527, 537 (1986). And a claim is not unavailable simply because it may have been "unacceptable to a particular court at that particular time." See Bousley, 523 U.S. at 623 (internal quotation marks omitted). A court analyzing cause considers only whether, at the time of the default, "the claim was 'available' at all." Id.

Jacobs contends the Rehaif decision meets the novelty exception because it "overturn[ed] the long-established interpretation of an important criminal statute

. . . that has been adopted by every single Court of Appeals to address the question." (See Doc. 43 at 17 (quoting Rehaif, 139 S. Ct. at 2201 (Alito, J., dissenting))). We disagree, and join numerous other federal courts holding that the *mens rea* issue decided in Rehaif was not so novel that its legal basis was unavailable to Jacobs, as it had been litigated in district courts within this circuit for decades prior to the Supreme Court's decision. See, e.g., United States v. Hunt-Irving, No. CR 14-520-5, 2022 WL 1623651, at *2 (E.D. Pa. May 23, 2022) (collecting cases); Stoner v. United States, No. 1:16-CR-00357-1, 2021 WL 3472385, at *3 (M.D. Pa. Aug. 6, 2021), certificate of appealability denied, No. 21-2682, 2022 WL 671455 (3d Cir. Mar. 1, 2022); United States v. Wood, No. CR 16-35, 2021 WL 1022693, at *11 (W.D. Pa. Mar. 17, 2021), certificate of appealability denied, No. 21-1836, 2021 WL 5071873 (3d Cir. Oct. 25, 2021); United States v. Duell, No. CR 15-87, 2021 WL 858445, at *4 (W.D. Pa. Mar. 8, 2021); United States v. Battle, No. CR 16-017, 2020 WL 4925678, at *5 (W.D. Pa. Aug. 21, 2020); United States v. Murphy, No. 1:13-CR-060, 2020 WL 1891791, at *2 (M.D. Pa. Apr. 16, 2020); see also United States v. Innocent, 977 F.3d 1077, 1084 (11th Cir. 2020) (Rehaif decision "not 'truly novel' in the sense necessary to excuse procedural default"). Accordingly, Jacobs has not established cause for procedural default. As we may only consider Jacobs' defaulted claim if he demonstrates both cause *and* prejudice, we decline to consider the prejudice prong. Cf. United States v. Jenkins, 333 F.3d 151, 155 (3d Cir. 2003) (citing Frady, 456 U.S. at 167; Bousley, 523 U.S. at 622).

## 2. *Procedural Default on <u>Rehaif</u> Claim – Actual Innocence*

Federal courts "strictly limit[] the circumstances under which a guilty plea may be attacked on collateral review." See Bousley, 523 U.S. at 621. If a defendant does not challenge his plea on direct review, he may overcome the procedural default "if he can establish that the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'" See id. at 623 (quoting Murray, 477 U.S. at 496). The actual innocence standard requires a defendant to show, in light of all the evidence, that "it is more likely than not that no reasonable juror would have convicted him." See id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). The term "'actual innocence' means factual innocence, not mere legal insufficiency." See id. at 623-24 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). The actual innocence exception applies "only in extraordinary cases." See Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000).

In a Section 922(g)(1) case, "if a person is a felon, he ordinarily knows he is a felon . . . [and a] defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty." See Greer, 141 S. Ct. at 2097. According to our court of appeals, the Greer decision effectively creates a presumption that the *mens rea* element is met if the individual charged "is, in fact, a felon." See United States v. Adams, ___ F. 4th ___, 2022 WL 1672141, at *12 (3d Cir. May 26, 2022).

Jacobs mentions "actual innocence" only twice in his motion and briefing: once to assert his second ground for relief, and again to state he "does not waive the argument that actual innocence may excuse his" failure to raise this issue on direct

13

<a>

review.  (See Doc. 43 at 5, 17).  Jacobs' passing references fall far short of the showing required to establish the likelihood of "actual innocence."  For example, Jacobs has neither alleged nor argued that his previous convictions were not felonies.  Cf. United States v. Hisey, 12 F.4th 1231, 1236 (10th Cir. 2021) (defendant overcame procedural default because his "past conviction had not been punishable with any prison time").  Nor does he posit—much less proffer any evidence—that he was subjectively unaware of his status at the time of his arrest in the instant matter.  (See generally Doc. 43).

Instead, Jacobs insists his guilty plea was *legally* insufficient because the government never proved Jacobs knew he was a felon, and that his plea agreement was deficient for the same reason.  (See id. at 18-20).  Jacobs has made no showing that a reasonable juror would have refused to convict him, cf. Bousley, 523 U.S. at 623; that his case is not the ordinary one in which a felon "knows he is a felon," cf. Greer, 141 S. Ct. at 2097; or that his case is otherwise extraordinary, cf. Werts, 228 F.3d at 193.  To the contrary, the record indicates Jacobs agreed with the government's factual recitation at his guilty plea, which noted Jacobs "gave a false name of Troy Young" during the traffic stop, and that he had been previously convicted of "possession with intent to deliver a controlled substance."  (See 3/26/18 Hr'g Tr. 21:25-22:2, 22:25-23:10).  Jacobs also did not object to the PSR's statement that he "said he lied about his identity because there were outstanding warrants for his arrest," or to its clear identification of two prior felony convictions in Philadelphia County.  (See Doc. 31 ¶¶ 7, 29-30; Doc. 26).  This demonstrates that Jacobs knew of his status and "factor[ed] that reality into the decision to plead

14

guilty." See Greer, 141 S. Ct. at 2097. Jacobs has not established actual innocence to clear the procedural default hurdle, and we will deny his motion on this ground.

### 3. *Constitutionality of Section 922(g)*

Jacobs' final ground rests on his claim that Section 922(g) is invalid and void for vagueness because it infringes on the United States Constitution's right to bear arms under the Second Amendment. (See Doc. 43 at 7, 20-26); U.S. CONST. amend. II. As with his Rehaif ground, Jacobs failed to raise this issue on direct appeal. (See Doc. 42). It is therefore procedurally defaulted unless he can show cause and prejudice or actual innocence. See Bousley, 523 U.S. at 622. Jacobs does not endeavor to show either element for this ground. (See Doc. 43 at 20-27). We thus conclude he cannot overcome procedural default caused by his failure to earlier litigate the constitutionality of Section 922(g).

Assuming *arguendo* Jacobs could establish both cause and prejudice for his unconstitutionality claim, this ground still fails on the merits. "The void-for-vagueness doctrine reflects the fundamental principle that, in order to comply with the requirements of due process, a statute must give fair warning of the conduct that it prohibits." United States v. Fontaine, 697 F.3d 221, 226 (3d Cir. 2012). When a statute involves rights other than those under the First Amendment, the court examines vagueness "as applied to the affected party." See id. (quoting United States v. Fullmer, 584 F.3d 132, 152 (3d Cir. 2009)). However, Jacobs' briefing only impugns the statute's facial validity. (See Doc. 43 at 20-25 (arguing Section 922(g) is unconstitutional "on its face" four separate times)). On this ground, his argument must fail, as our court of appeals has, "along with every court to consider the issue

15

. . . rejected challenges that § 922(g)(1) on its face violates the Second Amendment." See Folajtar v. Att'y Gen. of the U.S., 980 F.3d 897, 901 (3d Cir. 2020) (collecting cases). Thus, Section "922(g)(1) is constitutional as written." See id. Jacobs' argument is foreclosed by binding Third Circuit precedent, and we will deny his claim on this ground.

### IV.   Conclusion

We will deny Jacobs' motion (Doc. 43) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   June 8, 2022